IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN SCHREIBER, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ELI LILLY AND COMPANY, et al., | : | NO. 05-CV-2616 |
| Defendants. | : | |

MEMORANDUM

LEGROME D. DAVIS, J.                                             MARCH 27, 2006

_____Presently before the Court is Defendant Eli Lilly and Company's ("Lilly") Motion to

Dismiss or Transfer Claims Brought in Plaintiffs' Amended Complaint (Doc. No. 13), Defendant

University of Pennsylvania's Opposition thereto (Doc. No. 22), Plaintiffs' Opposition thereto

(Doc. No. 27), Defendant Lilly's Reply (Doc. No. 30) and Plaintiffs' Sur-Reply (Doc. No. 33).

For the following reasons, this Court denies Defendant Lilly's Motion to Dismiss.

I.      PROCEDURAL BACKGROUND AND FACTUAL HISTORY

        Plaintiffs Dr. Alan Schreiber and ZaBeCor Pharmaceutical Company commenced this

action against Defendant Lilly on June 2, 2005, alleging patent infringement, conversion, unjust

enrichment, breach of contract, misappropriation of trade secrets, fraud and fraudulent

inducement. Plaintiffs also request a declaratory judgment of inventorship and seek an

accounting of Defendant Lilly's monetary gain.  On June 17, 2005, plaintiffs amended the

complaint to add the University of Pennsylvania ("Penn") as a defendant.[1]  On August 23, 2005,

_____

[1] Plaintiff has stated that Penn is to be subsequently re-aligned as a party-plaintiff.  Am.
Compl. at 1.

1

Defendant Lilly filed the instant motion to dismiss.

In the early 1980s, Defendant Lilly developed a chemical compound named keoxifene.[2] After clinical trials failed to demonstrate that keoxifene was an effective treatment for breast cancer, Lilly considered keoxifene a "dead drug." Am. Compl. ¶ 1.  In early 1987, Dr. Schreiber, a biomedical researcher at Penn, obtained a sample of keoxifene from Lilly. Id. ¶ 24.  Dr. Schreiber discovered that keoxifene could be used to treat and prevent autoimmune and immune-mediated diseases. Id. ¶ 26.  In April 1987, Dr. Schreiber applied for a patent pertaining to the use of keoxifene for the treatment and prevention of rheumatoid arthritis and other autoimmune diseases. Id. ¶ 27.  In 1991, United States Patent No. 5,075,321 ("the '321 patent") was issued and assigned to Penn. Id. ¶¶ 7, 27.  Penn licensed its rights in the '321 patent exclusively to CorBec Pharmaceutical Company, Inc. ("CorBec"). Id. ¶¶ 8, 29; see also Penn's Answer ¶¶ 8, 29.  CorBec's rights have been sublicensed to ZaBeCor, including the right to bring patent infringement and other litigation. Am. Compl. ¶¶ 8, 30; see also Penn's Answer ¶¶ 8, 30.

Plaintiffs allege that in 1987 and 1994, Dr. Schreiber disclosed to Lilly, in confidence, his keoxifene inventions and related confidential information, including the use of keoxifene for the prevention and treatment of autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. Am. Compl. ¶¶ 3, 36.  Lilly and Dr. Schreiber agreed to maintain the confidentiality of their discussions for use only in mutually agreeable research or further ventures between the parties. Id. ¶¶ 34, 43.  After proposals for continued collaboration failed, Dr. Schreiber and Lilly ended their negotiations and terminated their relationship. Id. ¶¶ 52-54.

Unbeknownst to plaintiffs, Lilly allegedly used the information obtained from Dr.

---

[2] This chemical compound is also called raloxifene. Def. Lilly's Mot. at 4.

Schreiber to file a patent application claiming a method of inhibiting bone loss using raloxifene (keoxifene) and similar compounds. Id. ¶ 45.  The patent application issued as U.S. Patent No. 5,393,763 ("the '763 patent") on February 28, 1995. Id.; Def. Lilly's Mot. at Ex. 2, '763 Patent. Plaintiffs also allege that, based on the information obtained, Lilly filed three additional patent applications. Am. Compl. ¶¶ 55-57.  One of the additional patent applications, which was later issued as U.S. Patent No. 5,478,847 ("the '847 patent"), was for the use of benzothiophenes, a class of compounds that includes raloxifene, to inhibit bone loss. Id. ¶ 55.  The other two patent applications were for a method of inhibiting bone loss using raloxifene or similar compounds. Id. ¶¶ 56, 57.  These patent applications were later issued as U.S. Patent Nos. 5,457,117 ("the '117 patent") and 5,534,527 ("the '527 patent"). Id.  Lilly did not disclose the '321 patent in connection with any of the applications or identify Dr. Schreiber as an inventor in any of the patent applications. Id. ¶¶ 46-47, 58-59.

The United States Food and Drug Administration ("FDA") approved raloxifene (keoxifene), under the brand name EVISTA®, for prevention of osteoporosis in 1997 and treatment of osteoporosis in 1999.  Id. ¶¶ 61, 62.  EVISTA® has become one of Lilly's leading drugs. Id. ¶ 63.

II.   DISCUSSION

This action arises from Defendant Lilly's alleged infringement of the '321 patent and alleged misappropriation of inventions and trade secrets related to keoxifene.  Defendant Lilly seeks dismissal of this action, arguing that (1) this action should be dismissed pursuant to the "first-to-file" rule because the first properly filed action is pending in Indiana, (2) the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the

Amended Complaint fails to state a claim on which relief can be granted, and (3) in the alternative, the action should be transferred to Indiana pursuant to 28 U.S.C. § 1404(a).

A.      "First-to-File" Priority Rule[3]

The "first-to-file" rule, which favors the forum of the first-filed action, is a well-recognized doctrine of federal comity.  See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995); EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).  As a general rule, the first-filed suit has priority over subsequently filed suits. "Exceptions, however, are not rare, and are made when justice or expediency requires." Genentech, 998 F.2d at 937.  If "sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. Id. at 938.

1.      First-Filed Action

In the instant matter, the parties dispute which action is the first-filed action.  Plaintiffs filed this action against Defendant Lilly in the Eastern District of Pennsylvania on June 2, 2005. Fifteen days later, on June 17, 2005, plaintiffs amended their complaint to add Penn as a defendant.  On June 9, 2005, after plaintiffs filed this case but before Penn was added as a defendant, Defendant Lilly filed a declaratory judgment action against Dr. Schreiber, ZaBeCor and Penn in Indiana.

_____

[3] Since the issue of which action should have priority under the first-to-file rule "raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits," this Court shall apply Federal Circuit law to this issue. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (declining to apply Seventh Circuit law to an issue involving the "first-to-file" rule).

Defendant Lilly argues that the first properly filed action is pending in Indiana. Def. Lilly's Mot. at 12-15. Defendant contends that the original complaint in this matter was defective in that it failed to name Penn, the entity having the true interest in the disputed intellectual property, as a party. Id. at 12. Since the action in Indiana was filed before the original complaint in this matter was amended, Defendant Lilly believes the declaratory judgment action in Indiana should be considered the "first-filed" case and that the instant action should be dismissed because it is the "second-filed" case. Id. at 13.

"The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." RJF Holdings III, Inc. v. Refractec, Inc., No.Civ. 03-1600, 2003 U.S. Dist. LEXIS 22144, at *6 (E.D. Pa Nov. 24, 2003) (quoting Advanta Corp. v. VISA U.S.A., No.Civ. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *6-7 (E.D. Pa. Feb. 19, 1997)); see also Whelan v. United Pacific Industries, Inc., No.Civ. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *7-8 (E.D. Pa. Nov. 1, 2002) (deferring to a first-filed case even though the patent owners were not included as parties in the first-filed case); Schering Corp. v. Amgen Inc., 969 F. Supp 258, 267 (D. De. 1997) (finding that the addition of a new party is irrelevant to the question of which court had first acquired subject matter jurisdiction and noting that "relation back" analysis is unnecessary).[4] This Court was first to obtain possession of the subject of the dispute.

---

[4] Some district courts analyze whether an amendment to add a new party "relates back" to the date of the original pleading when determining whether the case is "first-filed." See National Foam, Inc. v. Williams Fire & Hazard Control, Inc., No.Civ. 97-3105, 1997 U.S. Dist. LEXIS 16734, at *13-14 (E.D. Pa. Oct. 29, 1997) (deferring to the first-filed case even though a defendant was not named in the initial complaint because the amended complaint related back to the date of the original pleading pursuant to Fed.R.Civ.Proc. 15(c)(3)); Optima Inc. v. Republic Industries, Inc., No. 94-3919, 1995 WL 72430, at *1-2 (E.D. La. Feb. 21, 1995) (finding that the amendment to add a defendant related back to the date of the original complaint).

This Court agrees with the holdings in RJF, Advanta, Whelan and Schering that relation

Even though plaintiffs' original complaint failed to name the patent owner as a party to the action, "such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit." Whelan, 2002 WL 31513432, at *2; see also National Foam, Inc. v. Williams Fire & Hazard Control, Inc., No.CIV.A. 97-3105, 1997 WL 700496, at *5 (E.D. Pa. Oct. 29, 1997) (deferring to the first-filed case even though plaintiff failed to name all appropriate defendants).  Plaintiffs' amendment of their complaint does not alter the fact that this matter was filed before the action in Indiana was filed.  This matter is the "first-filed" action.

　　　2.　　　First-to-File Rule Exceptions

　　　As a general rule, the first-filed suit has priority. "Exceptions, however, are not rare, and are made when justice or expediency requires." Genentech, 998 F.2d at 937.  If "sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. Id. at 938.  Factors that may overcome the presumptive right of the first litigant to choose the forum include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." Id.  Defendant Lilly argues that since the original action "was filed defectively in an effort to secure a tactical advantage,[5] was not served, and should logically have been brought

---

back analysis is unnecessary.  However, even if relation back analysis was required, the first-filed case would still be in the Eastern District of Pennsylvania as the addition of Penn as a defendant would relate back to the date of the original complaint. Fed. R. Civ. Proc. 15(c)(3); see also National Foam, 1997 WL 700496, at *15-16 (noting that notice may be imputed to proposed new parties when the original and added parties are so closely related that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced).

[5] Defendant Lilly has not provided any evidence in support of this contention.

6

elsewhere anyway," the Court has discretion to recognize the Indiana action as the "first-filed" action. Def. Lilly's Mot. at 13.  This Court declines to do so.[6]

B.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

    1.    Legal Standard[7]

Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Robb v. City of Philadelphia, 733 F.2d 286. 290 (3d Cir. 1984).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), all facts alleged in the complaint must be accepted as true. Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994).  A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

    2.    Material Appended to Defendant Lilly's Motion to Dismiss

As a general matter, matters extraneous to the pleadings may not be considered. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a document "integral to or explicitly relied upon in the complaint" may be considered without converting the motion to dismiss into one for summary judgment.[8] Id. (quoting Shaw v. Digital

---

[6] The Court analyzes a number of the Genetech factors when it addresses Defendant Lilly's transfer of venue arguments.

[7] When analyzing a purely procedural question not pertaining to patent law, "such as whether a Rule 12(b)(6) motion was properly granted," the rule of the regional circuit is applied. Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 793 (Fed. Cir. 2000).

[8] In its reply, Defendant Lilly suggests that this Court treat its motion to dismiss as a motion for summary judgment. Def. Lilly's Reply at 3 n.2.  When a district court converts a

Equipment Corp., 82 F.3d 1194, 1220 (3d Cir. 1996)); see also In re Rockefeller Center

Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999).  "A court may consider

an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss

if the plaintiff's claims are based on the document." Pension Benefit Guarantee Corp. v. White

Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Third Circuit notes that

the rationale behind these exceptions is that the primary problem raised by looking to documents

outside the complaint–lack of notice to the plaintiff–is dissipated where the plaintiff has actual

notice and has relied upon these documents in framing the complaint. In re Rockefeller Center,

184 F.3d at 287.

      Defendant Lilly appended thirty documents to its motion to dismiss. See Def. Lilly's Mot.

Plaintiffs note that seven of the attached documents, two of Lilly's patents, two letters and three

patent reissuance applications, were referenced in the Amended Complaint.[9]  Pls' Opp. at 12 n.7.

Plaintiffs do not dispute the authenticity of these seven documents.  Since these documents are

undisputedly authentic, plaintiffs' claims are based on these documents, and the documents are

explicitly relied upon in the complaint, this Court shall consider these seven documents when

deciding the motion to dismiss.

_____

motion to dismiss into a motion for summary judgment, it must provide the parties reasonable opportunity to present all material relevant to a summary judgment motion. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999).  Plaintiffs have not had sufficient notice or an opportunity to present all relevant materials. Therefore, this Court will not convert Defendant Lilly's motion to dismiss into a motion for summary judgment.

    [9] These documents are appended in the following exhibits: Exhibit 2: Lilly U.S. Patent No. 5,393,763; Exhibit 3: Lilly U.S. Patent No. 4,418,068; Exhibit 5: November 11, 1993 letter from Lilly to Dr. Schreiber; Exhibit 13: April 2, 1987 letter from Penn to Lilly; Exhibit 25: patent reissuance application for the '763 patent; Exhibit 26: patent reissuance application for the '117 patent; Exhibit 27: patent reissuance application for the '847 patent.

Plaintiffs argue that the "overwhelming majority" of documents appended to Defendant Lilly's motion to dismiss are not referenced in the Complaint and are not the basis for any of plaintiffs' claims. Pls' Opp. at 12 n7.  In large part, this Court agrees.  Specifically, this Court finds that Exhibits 6-12, 14, 16, 20 and 21, which contain articles, abstracts, brochures, a press release and an excerpt from the Merck Manual of Diagnosis and Therapy, Exhibits 4 and 22, which contain communications between the parties, Exhibits 17-19, which contain patent prosecution histories, Exhibits 23-24 and 30, which relate to the Lilly v. Barr case pending in Indiana, and Exhibits 28 and 29, which contain SEC forms for Inkine Pharmaceutical Company, Inc., are not integral to or explicitly relied upon in the complaint.  Therefore, the documents contained in these exhibits will not be considered.

In addition to the exhibits plaintiffs admitted were referenced in the complaint, this Court will consider Exhibit 1, which contains the FDA-approved labeling for EVISTA®, as plaintiffs' claims are, in part, based upon this document.  This Court shall also consider Exhibit 15, which contains the 1987 Confidentiality Agreement, as plaintiffs' claims are based upon this document and the document is explicitly relied upon in the Amended Complaint.  See Am. Compl. ¶ 34. For both of these documents, the primary problem raised by considering documents outside the complaint–lack of notice to the plaintiff–is not present.

3.      Dr. Schreiber's Work, Communications and Patent

Defendant Lilly argues that the entire Amended Complaint should be dismissed because Dr. Schreiber's work, communications and patent relate to the treatment of autoimmune disease, not post-menopausal osteoporosis. Def's Mot. at 15.  Specifically, Defendant Lilly believes that the patent infringement claim and the inventorship claims should be dismissed.

9

       a.      Patent Infringement Claim

Defendant Lilly argues that no colorable claim for infringement can be advanced because post-menopausal osteoporosis is not an autoimmune disease within the scope of the properly construed claims of the Schreiber '321 patent. Id. at 16-17.  The Federal Circuit has held that, in order to survive a motion to dismiss, "a patentee need only plead facts sufficient to place the alleged infringer on notice." Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) (finding that a complaint that alleged ownership of the patent, named each individual defendant, cited the allegedly infringed patent, described the means by which the defendants allegedly infringed and pointed to the specific sections of patent law invoked contained enough detail to survive a motion to dismiss).  The patent infringement claim in the Amended Complaint alleges that ZaBeCor has the exclusive worldwide right and license of the '321 patent and that Defendant Lilly has infringed the '321 patent by its manufacture, promotion, offering for sale, and sale of EVISTA®.  Am. Compl. ¶¶ 79-83.  Plaintiffs have pled sufficient facts to put Defendant Lilly on notice of their patent infringement claims.  Therefore, the patent infringement claim survives Defendant Lilly's motion to dismiss.[10]

       b.      Inventorship claims

Plaintiffs allege that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Am. Compl. ¶¶ 84-89. Defendant Lilly contends that the only methods of treating diseases with keoxifene even arguably

---

[10] Defendant Lilly also argues that "[c]onstruction of the patent claims is a question of law for the Court."  Def. Lilly's Mot. at 16.  While this is undeniably true, the proper time for this Court to address claim construction is not in a motion to dismiss. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

invented by Dr. Schreiber are the methods of treating autoimmune diseases claimed in his patent. Def. Lilly's Mot. at 17.  Defendant Lilly contends that since Dr. Schreiber's patent is fundamentally different from Lilly's patented inventions, which are directed to the treatment of post-menopausal osteoporosis, there can no legitimate claim of inventorship or co-inventorship. Id. at 17-18.

The Amended Complaint, however, alleges that in 1987, Dr. Schreiber, believing that he was communicating with Lilly under a confidentiality agreement, disclosed inventions and confidential information, "including use of keoxifene (raloxifene) for the prevention and treatment of autoimmune and immune-mediated diseases, including rheumatoid arthritis and osteoporosis, among others." Am. Compl ¶¶ 34-36.  It also alleges that after the 1987 communications, Defendant Lilly focused on the confidential information disclosed, "including the Dr. Schreiber-discovered inhibitory effect of keoxifene (raloxifene) on bone loss and osteoporosis." Id. ¶ 39.  According to the Amended Complaint, on January 12, 1994, using the inventions and information disclosed in confidence by Dr. Schreiber, Defendant Lilly filed a patent application claiming a method of bone inhibiting loss using raloxifene and similar compounds. Id. ¶ 45 (referring to the patent application for the '763 patent).  The Amended Complaint then concludes that the patent application for the '763 patent was derived in whole or in part from the information disclosed by Dr. Schreiber to Defendant Lilly. Id. ¶ 46.

The Amended Complaint makes similar allegations with regard to the '847 patent, the '117 patent and the '527 patent. Id. ¶¶ 55-60.  Dr. Schreiber visited Lilly scientists on February 2, 1994. Id. ¶ 49.  At this meeting, Dr. Schreiber and Defendant Lilly allegedly discussed Dr. Schreiber's inventions and confidential information relating to raloxifene, including the fact that

11

raloxifene could be used to treat autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. Id.  An attorney who was present at these meetings prosecuted Defendant Lilly's patents at issue. Id. ¶ 60.  The Amended Complaint alleges that the '847 patent, the '117 patent and the '527 patent were based on inventions and information Dr. Schreiber disclosed to Defendant Lilly in confidence. Id. ¶¶ 55-57.

Accepting all of the allegations contained in the Amended Complaint as true, this Court finds that the facts alleged adequately aver that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents.  Plaintiffs have adequately pled a claim for inventorship of the '763, '847, '117 and '527 patents.

4.      Trade Secret and Associated State Law Claims

Defendant Lilly argues that the trade secret and associated state law claims should be dismissed because Dr. Schreiber's information was free of any confidentiality restriction by virtue of the acts of Dr. Schreiber and Penn. Def's Mot. at 18.  Defendant Lilly contends that the information disclosed by Dr. Schreiber was published in 1987 and included in the text of the '321 patent, which was published in 1991. Id.  Since the information has been published, Defendant Lilly believes that the confidentiality restrictions have been lifted. Id.

Plaintiff argues that Defendant Lilly's argument is premised on the "misleading suggestion that the Schreiber patent and/or publications describe all of the research that Dr. Schreiber performed using keoxifene and all of the information shared with Lilly." Pl's Opp. at 15.  The allegations in the Amended Complaint, taken as true for the purpose of this motion to dismiss, provide support for plaintiffs' argument.  The Amended Complaint alleges that Dr. Schreiber disclosed confidential information relating to the use of keoxifene for "autoimmune

diseases and immune-mediated diseases and specifically for the treatment of osteoporosis." Am. Compl. ¶ 48; see also id.¶¶ 35-36, 49-50.  Plaintiffs claims are sufficient to survive a motion to dismiss.

     5.       Patent Infringement Damage Claim

     Defendant Lilly argues that the patent infringement damage claim should be dismissed on the grounds of laches because plaintiffs unreasonably delayed asserting the claim.[11] Def's Mot. at 18-19.  Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim and (2) material prejudice to the defendant as a result of the delay. A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992).  The strictures of Rule 12(b)(6) "are not readily applicable to a determination of laches," as the defense of laches usually requires factual development beyond the content of the complaint. Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc., 988 F.2d 1157, 1161 (Fed. Cir. 1993).  The mere passage of time does not constitute laches. Id.  Based on the information currently before the Court, it is not evident that plaintiffs' delay in bringing the claim was unreasonable or unexcused or that material prejudice resulted to Defendant Lilly.  In order to determine whether plaintiffs' claim is barred by laches, this Court needs more information than is contained in the Amended Complaint and Defendant Lilly's admitted exhibits.

     6.       Statute of Limitations for State Law and Common Law Claims

     Defendant Lilly argues that the state law and common law claims are barred by the statute

---

[11] Defendant argues that the unreasonable delay attributable to Penn's failure to assert any claim of infringement notwithstanding its knowledge of Defendant Lilly's activities should be imputed to ZaBeCor as the exclusive licensee of the Schreiber '321 patent. Def. Lilly's Mot. at 19.

of limitations. Def. Lilly's Mot. at 20.  Specifically, Defendant Lilly contends that the conversion (Count III), fraud/constructive fraud (County VII), fraudulent inducement (Count VIII) and accounting (Count IX) claims have a statute of limitation of two years pursuant to 42 Pa.C.S.A. § 5524, that the unjust enrichment (Count IV) and breach of contract (Count V) claims have a statute of limitations of four years pursuant to 42 Pa.C.S.A. § 5525, and that the trade secret misappropriation claim based upon the Indiana Uniform Trade Secrets Act (Count VI) has a statute of limitations of three years. Id.  Plaintiffs disagree with most of the statute of limitations cited by Defendant Lilly. Pl's Opp. at 16.  Specifically, plaintiffs argue that the breach of contract claims have a ten year statute of limitations pursuant to Ind. Code 34-11-2-11 and that the rest of the claims, with the exception of Count VI, are covered by Indiana's six year statute of limitations, Ind. Code § 34-11-2-7.  Id.  In its reply, Defendant Lilly argues that, even if Indiana statutes of limitations apply, the state claims are still time-barred.[12] Def. Lilly's Reply at 2-3.

A motion to dismiss premised on statute of limitations grounds may only be granted if it is apparent from the face of the complaint that the cause of action was not brought within the limitations period. Bethel v. Jendoco Construction Corp., 570 F2d 1168, 1174 (3d Cir. 1978).  In the Amended Complaint, plaintiffs allege that Dr. Schreiber first learned about Lilly's litigation

---

[12] Neither party fully addressed the statute of limitations issue.  For these claims, state law determines the applicable statute of limitations. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  The statute of limitations issue raises a choice-of-law question.  A federal district court adjudicating state law claims must apply the choice-of-law rules of the forum state, in this case Pennsylvania.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).  The operative choice-of-law rule in Pennsylvania is found in Pennsylvania's borrowing statute, 42 Pa.C.S.A. § 5521, which provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.C.S.A. § 5521(b).

with Barr "about late 2002 or early 2003." Am. Compl. ¶ 76.  Thereafter, he learned that

EVISTA® was the same compound on which his discoveries were based and that the

information disclosed in confidence to Defendant Lilly had been exploited by Lilly.  Id. ¶¶ 77-78.

Plaintiffs do not provide the specific time frame in which Dr. Schreiber, ZaBeCor or Penn

learned of Defendant Lilly's actions. Viewed in the light most favorable to plaintiffs, the

allegations in the Amended Complaint, on their face, demonstrate only that at some point after

early 2003, Dr. Schreiber learned about Defendant Lilly's actions that give rise to plaintiffs'

claims.  This point could have been after June 2, 2003.  Since the shortest possible statute of

limitations is two years and plaintiffs filed their complaint on June 2, 2005, the allegations in the

Amended Complaint are insufficient for this Court to determine whether the state law and

common law claims were brought within the limitations period.[13]

C.      Transfer of Venue[14]

        In the alternative, Defendant Lilly requests transfer of venue to the Southern District of

Indiana pursuant to 28 U.S.C. 1404(a).[15]  Def's Mot. at 20-25.  Section 1404(a) provides that

"[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a).  The burden of proving that transfer is appropriate is placed on the party

_____

        [13] This Court does not believe that plaintiffs should be rewarded for providing only
minimal information about the timing of their discovery of Defendant Lilly's actions.  However,
this Court believes that minimal discovery will enable the parties to determine whether the state
claims are time-barred on statute of limitations grounds.

        [14] Transfer of venue under 28 U.S.C. § 1404(a) is governed by the law of the appropriate
regional circuit. Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).

        [15] Neither party disputes that venue is proper in the Eastern District of Pennsylvania.

moving for transfer, in this case Defendant Lilly. Shutte v. AMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing Shutte). The Third Circuit has identified non-exhaustive list of public and private interest factors to determine whether the moving party has met its burden. Jumara, 55 F.3d at 879-80. Within this framework, a plaintiff's choice of forum demands paramount consideration and should not be lightly disturbed. Shutte, 431 F.2d at 24.

      1.      Private Interest Factors

The private interest factors help interpret the "convenience" language of section 1404(a). These private interest factors include: whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Jumara, 55 F.3d at 879. Defendant Lilly identifies three private interest factors that allegedly favor transfer to Indiana: the convenience of the witnesses; the ease of access to sources of proof and evidence in Indiana; and the fact that Indiana is the hub of activity for virtually all of the events underlying plaintiffs' claims. Def. Lilly's Mot. at 21-23. Plaintiffs argue that the convenience of the witnesses and the convenience of the parties both weigh against transfer to Indiana. Pls' Opp. at 19-20.

      a.      Convenience of the Witnesses

Defendant Lilly avers that "at least a dozen individuals who currently reside in Indiana" have potentially relevant information about plaintiffs' allegations. Id. at 22. Eight of Defendant Lilly's potential witnesses are current employees of Defendant Lilly and four are former

16

employees. Def. Lilly's Mot., Leeds Decl. ¶ 7.  In addition, the three inventors named on Lilly's

patents all reside in Indiana. Id.  Witnesses who are employed by a party carry no weight in the

Jumara convenience analysis so this Court will not consider the eight potential witnesses

employed by Defendant Lilly. See Affymetrix Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D.

Del. 1998).  Defendant Lilly notes that the witnesses, presumably the four former employees and

the three inventors, "are unlikely to be compelled by subpoena to travel to Pennsylvania to testify

before this Court." Def. Lilly's Mot. at 22.  While this statement suggests that these witnesses are

unavailable or unwilling to testify should the case remain in the Eastern District of Pennsylvania,

Defendant Lilly has not provided any witness affidavits that support this contention. See Jumara,

55 F.3d at 879 (looking to the convenience of witnesses, but only to the extent that "witnesses

may actually be unavailable for trial in one of the fora"); Lomanno v. Black, 285 F. Supp. 2d

637, 646-47 (E.D. Pa. 2003) (citing witnesses' affidavits averring that the forum would be

inconvenient).

Plaintiffs argue that some of plaintiffs' witnesses reside in this District. Pls' Opp. at 18-

19.  Specifically, plaintiffs argue that former members of Penn who will confirm the confidential

communications with Lilly, former research assistants who will confirm Dr. Schreiber's research

and discoveries and what was conveyed in confidence to Lilly, and the lawyers who prosecuted

the relevant patent application are potential witnesses residing in this District. Id.  Plaintiffs

claims that its "crucial witnesses are entirely independent of Plaintiffs." Id.  Defendant Lilly

believes that plaintiffs' list of witnesses in this District consists of only two people: Dr. Schreiber

and one employee from the Penn technology transfer office who was involved in the

communications underlying the Amended Complaint. Def. Lilly's Reply at 5-6.

Plaintiffs have not provided any sworn testimony regarding the number of witnesses residing in this District so this Court is unable to determine the potential number of witnesses residing in Pennsylvania.  While Defendant Lilly provided a list of witnesses, seven of which are non-employees who reside in Indiana, it did not provide sworn testimony that these witnesses were unavailable or unwilling to testify in this District.  Given the evidence submitted, this Court cannot find that this factor weighs in either party's favor.

b.      Ease of Access to Sources of Proof and Evidence

Defendant Lilly argues that at least 500,000 pages of relevant documents are located in Indiana. Def. Lilly's Mot. at 22.  Consideration of the location of books and records is "limited to the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879.  Defendant does not allege that the relevant documents cannot be produced in the Eastern District of Pennsylvania.  As a result, the location of these documents is irrelevant to the venue analysis.

c.      Hub of Activity

Defendant Lilly argues that Indiana is the hub of activity for virtually all of the events giving rise to plaintiffs' claims. Def. Lilly's Mot. at 21-23.  Defendant Lilly argues that the "center of gravity" for plaintiffs' patent infringement claim is in Indiana and that plaintiffs' inventorship, state and common law claims are based upon a series of meetings, communications, discussions and agreements with Lilly.  Id. at 21-22.  Penn argues that the claims arose in Pennsylvania, noting research at Penn that led to the inventions at issue and communications sent from, or sent to, parties that reside in this District.[16]  Penn's Opp. at 5, 8-9.

---

[16] Plaintiffs do not address Defendant Lilly's contention that the claims arose in Indiana. In fact, plaintiffs argue that Indiana law should apply to the state and common law claims. See Pls' Opp. at 16.

The Court believes that this factor weighs in favor of Defendant Lilly.

        d.     Convenience of the Parties

Plaintiffs argue that the convenience of the parties as indicated by their relative physical and financial condition weighs in favor of letting the case remain in the Eastern District of Pennsylvania. Pls' Opp. at 19-20; see also Jumara, 55 F.3d at 879.  Plaintiffs note that the Lilly is a multi-billion dollar corporation with interests and activities spanning the globe. Pls' Opp. at 19. Financially, Defendant Lilly is capable of shouldering the inconvenience of litigating in Pennsylvania.  Plaintiffs, on the other hand, have limited resources. Id.  Dr. Schreiber and ZaBeCor, both of which are domiciled in the Eastern District of Pennsylvania, argue that it would be a significant hardship if they were compelled to litigate their claims in Indiana. Id. at 1, 19-20.  Penn is a Pennsylvania not-for-profit educational institution and would similarly be inconvenienced by litigation in Indiana. Penn's Opp. at 1.  This factor weighs in favor of the current venue.

        2.     Public Interest Factors

The public interest factors help interpret the "interest of justice" language of section 1404(a).  These public interest factors include: enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.  Jumara, 55 F.3d at 879-80.  Defendant Lilly identifies two public interest factors that support a transfer to Indiana: judicial economy and the applicability of Indiana law. Def. Lilly's Mot. at 23-25; Def. Lilly's Reply at 8.

Defendant Lilly argues that the <u>Lilly v. Barr</u> case ("the <u>Barr</u> litigation") currently pending in the Southern District of Indiana involves many of the same legal and factual issues presented by Plaintiffs' Amended Complaint.[17] Def. Lilly's Mot. at 23.  Defendant Lilly argues that since the Indiana court has already acquired considerable familiarity with the issues, judicial economy will be best served if this case is transferred to Indiana. <u>Id.</u> at 23.  The <u>Barr</u> litigation involves seven Lilly patents and has been pending for three years in Indiana.  Defendant Lilly does not contend that the instant case should be consolidated with the <u>Barr</u> litigation. Def. Lilly's Reply at 8.  However, according to Defendant Lilly, the <u>Barr</u> litigation and the instant case both require construction of the claims of the '763, '847 and '117 patents.  Def. Lilly's Mot. at 23-24.  Defendant Lilly also claims that the Schreiber '321 patent is "central to both cases." Def. Lilly's Reply at 8.  Plaintiffs believe that Lilly overstates the legal and factual relationship between the instant matter and the <u>Barr</u> litigation. Pls' Sur-Reply at 7.  Plaintiffs contend that there is no legally relevant overlap between the '763, '847 and '117 patents. Pls' Opp. at 23.

This Court does not believe that the legal and factual issues overlap to such an extent that transfer on this basis is justified. <u>See SmithKline Beecham Corp. v. Geneva Pharmaceuticals</u>, No. 99-2926, 2000 WL 217642, at *2 (E.D. Pa. Feb. 11, 2000) (denying a motion to transfer when the case involved two patents not at issue in the Illinois case and discovery had already been completed in the Illinois case); <u>Max Planck Gesellshaft Zur Foederung Der Wissenschaften, E.V.</u>

---

[17] The <u>Barr</u> litigation was instigated when Barr sought FDA permission to sell a generic version of EVISTA®. Def. Lilly's Mot. at 11.  In the <u>Barr</u> litigation, Barr has asserted that seven of Lilly's patents, including the '763, '847 and '117 patents, are invalid. <u>Id.</u>  One of Barr's arguments that those patents are invalid is based upon its assertion that the Schreiber '321 patent anticipates the subject matter claimed in the '763, '847 and '117 patents. <u>Id.</u>  The plaintiffs in the instant matter are not involved in the <u>Barr</u> litigation.

v. General Electric Co., 858 F. Supp. 380, 382 (S.D.N.Y. 1994) (finding that familiarity of a court with a specific patent should not be given weight).

Defendant Lilly also argues that the case should be transferred to Indiana because Indiana law applies and the Southern District of Indiana routinely applies Indiana law. Def. Lilly's Reply at 8. Assuming *arguendo* that Indiana law applies, there is nothing to indicate that this Court would have difficulty applying Indiana law to this case. See De Lage Landen Financial Services, Inc. v. Cardservice International, Inc., No.Civ.A. 00-2355, 2000 WL 1593978, at *2 (E.D. Pa Oct. 25, 2000) ("federal judges routinely apply the law of various jurisdictions").

      3.     Balance of the Factors

Upon consideration of the parties' arguments, this Court is not persuaded that a transfer to the Southern District of Indiana is appropriate. Defendant Lilly has not made a convincing showing that the balance of factors outweighs the paramount consideration given to plaintiffs' choice of forum. Accordingly, this case will not be transferred.

## III.    CONCLUSION

Accordingly, Defendant Lilly's Motion to Dismiss or Transfer Claims is DENIED. An appropriate order follows.